

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __APR 0 4 2019__

~~Fairhurst, C.J.~~

CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m. on April 4, 2019

_____ Deputy

for Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95814-9 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JEREMIAH JAMES GILBERT, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed ____ APR 0 4 2019 |

JOHNSON, J.—This case concerns the scope of discretion a judge has in resentencing pursuant to RCW 10.95.035. In 1992, when Jeremiah Gilbert was a juvenile, he was charged and convicted of aggravated murder, premeditated murder, and multiple other crimes. He was sentenced to life without parole for the aggravated murder along with a consecutive sentence for the premeditated murder, as required under the laws in effect at that time. When RCW 10.95.035 was enacted, Gilbert became entitled to a new sentencing hearing. During his resentencing, Gilbert argued that the judge should restructure his two sentences such that they would run concurrently. However, the judge ruled that he lacked

statutory authority to address anything other than Gilbert's sentence for aggravated murder and imposed a sentence of 25 years to life, leaving intact the consecutive sentence of 280 months for the premeditated murder conviction. The Court of Appeals affirmed. We reverse and remand for resentencing.

## FACTS

When Gilbert was 15, he murdered two men and attempted to murder a third. He and a companion had run away from home, journeying on foot to Klickitat County, where they attempted to steal a Ford Bronco owned by Farrell Harris. Harris, who was hunting nearby, returned and tried to halt the theft; however, Gilbert opened fire on him with a rifle. Harris was able to retreat to the woods where he found cover. Robert Gresham came upon the scene on a motorcycle shortly after and stopped. Gilbert shot Gresham twice in the shoulder and then proceeded to shoot him in the head, killing Gresham. Another person, Loren Evans, approached the scene in his truck, and Gilbert shot him in the head through the windshield, instantly killing him. The two young men disabled the Bronco they had been trying to steal and left in Evans's truck. Harris was able to drive Gresham's motorcycle to a nearby home, and he alerted law enforcement, who were able to apprehend Gilbert and his companion soon after.

The State charged Gilbert in adult court with six offenses: first degree murder of Gresham, aggravated first degree murder of Evans, second degree

assault, first degree burglary, first degree theft, and first degree robbery. The jury convicted him on all charges and Gilbert was sentenced to life in prison without parole for the aggravated first degree murder conviction along with a consecutive sentence of 280 months for first degree murder. The sentences for the remaining four convictions were to run concurrent with the aggravated murder sentence.

Following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), Washington amended RCW 10.95.030 and enacted RCW 10.95.035, eliminating mandatory sentences of life without parole for juvenile offenders and requiring resentencing for those who had previously received such sentences. In accordance with the new and amended statutes, the trial court held a resentencing hearing for Gilbert on September 21, 2015. Defense counsel argued for the court to go beyond merely adjusting Gilbert's sentence of life without parole and to restructure his first degree murder sentence such that it would run concurrently. However, the judge rejected this argument, holding that he lacked the authority to do anything other than adjust the sentence for aggravated murder. The court imposed a sentence of 25 years to life for aggravated murder and left intact the 280 month consecutive sentence for first degree murder. Gilbert appealed, and the Court of Appeals affirmed his sentence. *State v. Gilbert*, No. 33794-4-III (Wash. Ct. App. Apr. 3, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/337944_unp.pdf.

3

Gilbert petitioned this court, and we granted review.[1] *State v. Gilbert*, 191 Wn.2d 1012, 426 P.3d 735 (2018).

ISSUE

Whether a judge performing a resentencing pursuant to RCW 10.95.035 has discretion to impose an exceptional downward sentence.

ANALYSIS

In 2005, the United States Supreme Court decided *Roper v. Simmons*, in which it held, "The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Then, in 2010, the Court held that the United States Constitution also forbids the imposition of life without parole on a juvenile offender who did not commit homicide. *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Finally, in 2012, the Court decided *Miller*, in which it expanded on *Graham*, holding it unconstitutional to require a life without parole sentence on a juvenile offender for any crime. The Court did not completely foreclose life sentences for juvenile offenders, but it held that at the very least, courts must have the

---

[1] Gilbert challenged his resentencing in a direct appeal to the Court of Appeals and then to this court. Because the State did not raise the issue of whether a direct appeal is the proper method for challenging the resentencing, we do not address it. *See* RCW 10.95.035(3).

opportunity to consider mitigating circumstances of youth before imposing a life without parole sentence. *Miller*, 567 U.S. 460.

The Washington Legislature responded to *Miller* by enacting Second Substitute Senate Bill 5064, 63d Leg., Reg. Sess. (Wash. 2014) (SSSB 5064). The bill amended RCW 10.95.030, the sentencing statute for aggravated first degree murder, to eliminate mandatory life sentences for juvenile offenders and, instead, establish mandatory minimum sentences of at least 25 years with a maximum sentence of life in prison. The bill also created RCW 10.95.035, which required resentencing for any juvenile offender sentenced to life without parole prior to passage of SSSB 5064. The statute requires resentencing of these offenders to be performed consistent with the amended RCW 10.95.030. Finally, the bill enacted RCW 9.94A.730, which allows most juvenile offenders to petition for release once they have served 20 years in prison.[2]

Under RCW 10.95.035, Gilbert was entitled to a resentencing hearing. At the resentencing hearing, defense counsel argued that aside from adjusting his aggravated murder sentence, the court should restructure Gilbert's sentences such that they would run concurrently. The State argued that the only issue before the court was adjusting the minimum term for Gilbert's aggravated murder conviction

---

[2] We requested supplemental briefing on the applicability of RCW 9.94A.730 to Gilbert's sentence. Both parties seem to agree the statute does not apply, so we do not address it.

because the statute "did not include authority . . . that allows the court to reconsider the concurrent/consecutive nature of the sentences." Clerk's Papers at 29. The State also asserted that even if the court revisited the issue of consecutive or concurrent sentences, RCW 9.94A.589 required consecutive sentences because Gilbert's crimes involved two or more serious violent offenses arising from separate and distinct criminal conduct. The court adopted the State's argument in toto, agreeing with its analysis of the law and the statute. Report of Proceedings at 20.

Gilbert argued to the Court of Appeals that the resentencing judge erred in this determination and that the judge did have discretion to consider an exceptional downward sentence. The Court of Appeals rejected this argument and affirmed his sentence. The court held that reconsideration of the other sentences is not part of RCW 10.95.035 and that the only issues presented in the resentencing were those related to the aggravated murder sentence. The court recognized that our recent holding in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), may entitle Gilbert to consideration of an exceptional sentence; however, it held that such relief would be available to him only through a timely personal restraint petition. *Gilbert*, No. 33794-4-III, slip op. at 8. This conclusion mischaracterizes *Houston-Sconiers* and misreads the statutory resentencing requirements under RCW 10.95.035 and .030.

6

In *Houston-Sconiers*, we recognized the discretion a judge possesses during juvenile sentencing when, similar to Gilbert's case, mandatory firearm enhancements were required by statute to be served consecutively. In that case, during sentencing the judge expressed frustration at being unable to impose an exceptional downward sentence to avoid consecutive sentences. We disagreed with the judge's conclusion that he lacked such discretion and reversed, remanding for resentencing and holding that sentencing courts must account for the mitigating qualities of youth and have absolute discretion to consider an exceptional downward sentence in light of such mitigating factors. We held that sentencing courts possess this discretion to consider downward sentences for juvenile offenders regardless of any sentencing provision to the contrary. *Houston-Sconiers*, 188 Wn.2d at 21.

Although *Houston-Sconiers* did not involve a resentencing under RCW 10.95.035, it did address and resolve the discretion judges have in sentencing for crimes committed by juveniles and, important to the issue here, the discretion to consider exceptional sentencing even where statutes would otherwise limit it. Our opinion in that case cannot be read as confined to the firearm enhancement statutes as it went so far as to question *any* statute that acts to limit consideration of the mitigating factors of youth during sentencing. Nor can it be read as confined to, or excluding, certain types of sentencing hearings as we held that the courts have

7

discretion to impose downward sentences "regardless of how the juvenile got there." *Houston-Sconiers*, 188 Wn.2d at 9.

Thus, even if the resentencing court here was correct in its conclusion that RCW 10.95.035, on its face, limits the scope of a resentencing hearing to merely adjusting aggravated murder sentences—it was, nevertheless, required to consider Gilbert's youth as a mitigating factor and had discretion to impose a downward sentence. RCW 10.95.035 cannot act to limit that discretion.

We also recognized that the court must consider the mitigating circumstances related to the defendant's youth, including, but not limited to, the juvenile's immaturity, impetuosity, and failure to appreciate risks and consequences—the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, the way familial and peer pressures may have affected him or her, how youth impacted any legal defense, and any factors suggesting that the juvenile might be successfully rehabilitated. *Houston-Sconiers*, 188 Wn.2d at 23 (quoting and citing *Miller*, 567 U.S. at 477.)

The sentencing court should consider these circumstances, the convictions at issue, the standard sentencing ranges, and any other relevant factors—and should then determine whether to impose an exceptional sentence, taking care to thoroughly explain its reasoning. "While formal written findings of fact and

conclusions of law are not strictly required, they are always preferable to ensure that the relevant considerations have been made and to facilitate appellate review." *State v. Ramos*, 187 Wn.2d 420, 444, 387 P.3d 650, *cert. denied*, 138 S. Ct. 467 (2017).[3] If, after considering such factors, the trial court does find an exceptional sentence is warranted, it may adjust the standard sentence to provide for a reduced term of years, for concurrent rather than consecutive sentences, or for both.

Because the judge presiding over Gilbert's resentencing believed he did not have discretion to consider anything other than an adjustment to the aggravated murder sentence, he did not consider whether the mitigating factors of Gilbert's youth might warrant an exceptional sentence. We hold this to be error. Gilbert was entitled at his resentencing to consideration of an exceptional sentence in light of the potential mitigating factors of youth. Therefore, we reverse and remand for

---

[3] In *Ramos*, we confronted the issue of what procedures are required before sentencing a juvenile offender to a sentence that is the functional equivalent of life without parole. The trial court that sentenced Ramos followed procedures closely mirroring those we have outlined here and in *Houston-Sconiers*, and we held this to be adequate to uphold the sentence imposed by the court. *Ramos*, 187 Wn.2d at 450-53.

resentencing.[4]

_____
Johnson, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____
Madsen, J.

_____
Owens, J.

_____
Wiggins, J.

_____
Stephens, J.

_____
González, J.

_____
Yu, McCloud, J.

_____
Yu, J.

_____

[4] Gilbert also sought relief on claims that he faces an unconstitutional de facto life sentence and that his sentence constitutes an equal protection violation. Because we reverse and remand for resentencing, we do not reach these claims.